IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGIA FILM FUND SEVENTEEN
PRODUCTIONS, LLC,

      Plaintiff,

v.                                  No. 1:14-CV-00032-KG-KK

JUAN SANCHEZ, individually and as President of the
CHILILI LAND GRANT/LA MERCED DE CHILILI,
the LA MERCED DE PUEBLO O DE CHILILI BOARD
OF TRUSTEES, and PATRICK ELWELL,

      Defendants.

## MOTION TO DISMISS ELWELL CROSS-CLAIMS

COME NOW the Defendants Juan Sanchez and the Board of Trustees of the Chilili Land Grant and move to dismiss Elwell's Cross-Claims.  Elwell makes five claims against the land grant and Juan Sanchez: 1) conspiracy to trespass; 2) intentional and negligent misrepresentation; 3) trespass and conversion; 4) unjust enrichment; and 5) negligence. Elwell's tort claims are precluded by Section 41-4-16 NMSA 1978 which requires that notice of any tort claim to a governmental entity must be given within 90 days of the occurrence giving rise to a claim for which immunity has been waived.  They are also precluded because there is no waiver for the claimed torts under the New Mexico Tort Claims Act ("NMTCA"), Section 41-4-1 et seq. NMSA 1978. Additionally, Elwell's claims for exemplary or punitive damages and prejudgment interest are barred by section 41-4-19(d).  Elwell's exclusive remedy is inverse condemnation. Finally. the Cross-Claims against Defendant Sanchez individually fail to state claims upon which relief may be granted.

Under Rule 12(b)(6), a Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests

1

the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994).

The Chilili Land Grant is a political subdivision of the State of New Mexico. Section 49-4-4 NMSA 1978 provides:

The Chilili land grant-merced shall be controlled and governed by the Treaty of Guadalupe Hidalgo, by the provisions of Chapter 49, Article 4 NMSA 1978 as a political subdivision of the state and by all provisions of its bylaws not in conflict with the Treaty of Guadalupe Hidalgo or state law.

The NMTCA defines a "governmental entity" as "the state or any local public body" and provides that "local public body" means all political subdivisions of the state and their agencies". § 41-4-3(B) and (C).

## I. ELWELL'S TORT CLAIMS ARE PRECLUDED BY SECTION 41-4-16 NMSA 1978

The NMTCA is the only remedy against a governmental entity or public employee for any tort for which the NMTCA waives immunity.  "No other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against a public employee or his estate whose act or omission gave rise to the suit or claim." §41-4-17(A) N.M.S.A. 1978. A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions listed in the NMTCA. *Begay v. New Mexico,* 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985) (consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act).

Elwell's tort claims are precluded by Section 41-4-16 N.M.S.A. 1978 which requires that notice of any tort claim to a governmental entity must be given within 90 days of the occurrence

giving rise to a claim for which immunity has been waived. Section 41-4-16 NMSA 1978

provides:

A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

As a political subdivision of the State of New Mexico, the land grant is protected against

claims not made within ninety days of the occurrence giving rise to Elwell's claims. The affidavit

of Juan Sanchez, President of the Board of Trustees of the land grant, attached hereto, establishes

he nor the Board of Trustees were presented written notice of a claim for which immunity has

been waived within ninety days of the occurrence. The first written notice to Mr. Sanchez and

the land grant was by certified mail of November 27, 2013. According to the letter dated

November 27, 2013, the occurrence was on or after August 2, 2012. This notice-of-claim

requirement operates as a statutory limitations period and failure to file a timely notice of claim

is a statutory bar to suit. *Godwin v. Memorial Medical Center,* 2001-NMCA-033, ¶ 32, 130 N.M.

434, 25 P.3d 273 (Ct. App. 2001).

## II. THE TORTS THAT FORM THE BASIS OF ELWELL'S CLAIMS HAVE NOT BEEN WAIVED UNDER THE NEW MEXICO TORT CLAIMS ACT

Elwell's Cross-Claim does not identify a waiver under the NMTCA that allows any of the

claims to proceed had there been timely notice.

3

**A. CONSPIRACY TO TRESPASS**

Elwell's conspiracy claim must be dismissed because the NMTCA does not waive immunity for a conspiracy claim. *Seeds v. Lucero*, 2005-NMCA- 67, ¶'s 7-16, 137 N.M. 589, 113 P.3d 859; Also see *Salazar v. City*, CIV 10-0645 JB/ACT, Memorandum Opinion and Order at 65 (D.N.M. 8/20/13).

**B. MISREPRESENTATION**

Elwell alleges that Defendant Sanchez and the land grant intentionally or negligently misrepresented that the land grant was the owner of the land on which the filming took place. Misrepresentation is a tort. *Davis v. Board of County Com'rs*, 1999-NMCA-110, ¶ 34, 127 N.M. 785, 987 P.2d 1172 (Ct. App. 1999). There is no waiver of immunity for the claims of misrepresentation made by Elwell under the NMTCA, Section 41-4-1 et seq.

**C. TRESPASS AND CONVERSION**

Elwell's trespass and conversion claims must be dismissed because there is no waiver for such torts under the NMTCA. *Townsend v. State ex rel. State Highway Dept.*, 117 N.M. 302, 304, 871 P.2d 958, 959-960 (1994) (claims for trespass and conversion are not torts for which immunity has been waived by the Act). Also see *Baca v. City of Albuquerque et al,* CIV 11-0122 KBM/ACT Memorandum Opinion and Order at 12-13(D.N.M.) May 10, 2011.

**D. UNJUST ENRICHMENT**

Elwell's unjust enrichment claim must be dismissed because immunity has not been waived for such a claim. A claim for unjust enrichment is an action based on contract within the grant of immunity to governmental entities under Section 37-1-23 N.M.S.A. 1978. *Hydro Conduit Corporation v. Kemble*, 110 N.M. 173, 174, 793 P.2d 855 (1990). Also see *Valdez v. State*, 2002- NMSC- 28, ¶ 10, 132 N.M. 667, 54 P.3d 71 (because *Hydro* specifically extends

4

governmental immunity to unjust enrichment claims, state entities cannot be sued for unjust enrichment).

**E. NEGLIGENCE**

Elwell's negligence claims must also be dismissed because immunity has not been waived for the negligence claims he makes. Elwell's sole negligence claim against Defendant Sanchez and the land grant, at page 14 of the Cross-Claim, is that they had a duty to exercise reasonable care to ensure that the film was shot on the lands of the land grant and not on Elwell's land; and that such defendant's breach their duty to Elwell by directing or permitting the film to be shot on Elwell's land.  Elwell's Cross-Claims fail to identify a waiver of immunity under the NMTCA.  A review of the Act establishes that Elwell cannot fit his negligence claim within any of the waivers set forth in the Act.  The actions complained of do not constitute actions of public employees in the operation or maintenance of motor vehicles, aircraft or watercraft (Section 41-4-5); operation or maintenance of a building, public park, machinery, equipment or furnishings (Section 41-4-6); operation of airports (Section 41-4-7); operation of public utilities (Section 41-4-8); operation of medical facilities (Section 41-4-9); negligence of health care providers (Section 41-4-10); construction or maintenance of highways and streets (Section 41-4-11); or the actions of law enforcement officers (Section 41-4-12).

**III.  PLAINTIFF'S CLAIMS FOR EXEMPLARY OR PUNITIVE DAMAGES AND PREJUDGMENT INTEREST ARE BARRED BY SECTION 41-4-19(D).**

Punitive damages are not recoverable against the Chilili Land Grant, a political subdivision of the State of New Mexico.  As a political subdivision of the State of New Mexico, the land grant is protected against exemplary or punitive damage claims by Section 41-4-19(D) N.M.S.A. 1978:

No judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment.

## IV. INVERSE CONDEMNATION IS ELWELL'S EXCLUSIVE REMEDY

Defendant's Sanchez and the Chilili Land Grant contend that Elwell's exclusive remedy is an inverse condemnation action.  As long as the property has been taken or damaged for public use, inverse condemnation provides the exclusive remedy for the property owner if the condemnor takes or damages property without paying just compensation or without initiating proceedings to condemn. *North v. PNM,* 101 N.M. 222, 226, 680 P.2d 603 (Ct.App.1984). Inverse condemnation is the appropriate and exclusive remedy. *Townsend v. State ex rel. State Highway Dept.*, 117 N.M. 302, 304, 871 P.2d 958 (1994).

## V. THE CROSS-CLAIMS FAIL TO STATE CLAIMS AGAINST DEFENDANT SANCHEZ

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Accordingly, while the Court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss. *Iqbal,* 129 S. Ct. at 1950.

Elwell's Cross-Claims against Defendant Sanchez do not allege any facts which would make him individually liable. Paragraph 7 states "[t]he Chilili Land Grant is responsible for the

conduct of Sanchez and its other agents under the doctrine of respondent superior". Paragraph 14 states: [u]pon information and belief, Sanchez or other persons acting in their capacities as representatives as of the Chilili Land Grant, directed or participated in the selection of the Property as the location for the filming of Lone Survivor". Paragraph 21 states: [u]pon information and belief, Sanchez or other agents of the Chilili Land Grant represented to Georgia Film that it was the owner of the Property".

The Legislature has specifically defined "scope of duties" under the Tort Claims Act to mean "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance". § 41-4-3(G) (1995) NMSA 1978. Elwell fails to specify any actions by Sanchez which he was not requested, required, or authorized to perform. As a result, the claims against Sanchez individually should be dismissed. See *Garcia-Montoya v. State Treasurer's Office*, 2001-NMSC-3, ¶ 50, 130 NM 25, 16 P.3d 1084 (N.M., 2001).

## VI. CONCLUSION

For all of the foregoing reasons Defendant Sanchez and the Board of Trustees of the Chilili Land Grant respectfully request that Elwell's Cross-Claims be dismissed.

> By: */s/ Narciso Garcia, Jr., LLC*
> NARCISO GARCIA, JR., LLC
> Attorney for Defendants Sanchez and
> Board of Trustees of the Chilili Land Grant
> 2033 San Mateo Blvd., N.E.
> Albuquerque, New Mexico 87110
> (505) 265-5010

I HEREBY CERTIFY that a copy of the foregoing pleading was electronically filed, which caused the document to be electronically transmitted to defense counsel on this 20th day of December, 2014.
 */s/ Narciso Garcia, Jr., LLC*
NARCISO GARCIA, JR., LLC

## AFFIDAVIT

Juan Sanchez, after being sworn states:

      1. My name is Juan Sanchez and all of the statements made in this affidavit are based on my personal knowledge.

      2. I am the President of the Board of Trustees of the Chilili Land Grant and have been President since 1989.

      3. The first written notice to the Chilili land Grant Board of Trustees and myself of Mr. Elwell's claims and the claims of the Plaintiff was by the November 27, 2013 letter of Geoffrey D. Rieder, Esq. attached hereto.

      4. No notice of the claims to the Board of Trustees or myself was made within 90 days of the filming in question.

      SUBSCRIBED AND SWORN TO before me this _18th_ day of _DEC._ , 20_14_ by Juan Sanchez. Witness my hand and official seal:

Official Seal
Sara L. Coleman
Notary Public
State of New Mexico
My Commission Expires: 2/24/15

_____
JUAN SANCHEZ

_____
Notary Public

My commission expires:

_2/24/15_



# FOSTER, RIEDER & JACKSON, P.C.

201 Third Street N.W., Suite 1500
Post Office Box 1607
Albuquerque, New Mexico 87103-1607
Telephone (505) 767-0577
Facsimile (505) 242-9944

Geoffrey D. Rieder                                                          email: geoff@frjlaw.com

November 27, 2013
*Via Certified Mail, Return Receipt Requested
and U.S. Mail*

Mr. Juan Sanchez, President
Chilili Land Grant/La Merced de Chilili and
La Merced de Pueblo de Chilili Board of Trustees (Land Grant)
14 Old Chilili Rd.
Chilili, New Mexico 87059.

  *Re:*     *Location Agreement with Georgia Film Fund Seventeen Productions, LLC*

Dear Mr. Sanchez:

I represent the Georgia Film Fund Seventeen Productions, LLC. I am writing to you concerning the Location Agreement dated August 2, 2012, signed by you as the President for the "Owner" of the referenced premises.

Enclosed you will please find a copy of a letter I have today sent to Mr. Paul Elwell. Mr. Elwell claims that he is the owner of the premises covered by the Location Agreement license granted to Georgia Film Fund Seventeen Productions, LLC pursuant to the Location Agreement.

In reviewing the Location Agreement as well as the "Requirements For Site Filming..." accompanying the agreement, I note that the documentation clearly states that the property covered by the Agreement is owned by the Chilili Land Grant ("Owner"), or that the Land Grant was authorized to act as the agent for such owner. Importantly, those representations and warranties provide that:

Owner warrants that Owner is the owner (or agent for the owner) of said premises, that Owner is fully authorized to enter into this Agreement and has the right to grant Produce[r] the use of said premises and each and all of the rights herein granted and no third party's permission is required for the use of

Mr. Juan Sanchez
November 27, 2013
Page 2

said premises. Owner shall indemnify and hold Producer harmless from and against any and all loss, cost, liabilities, damages or claims (including attorney's fees) of any nature arising from the breach of warranty or agreement made by Owner in the Agreement.

Paragraph 9.

The warranty and representation quoted above is important for two reasons. First, it specifically warrants that the Land Grant is in fact the owner of the premises which are the subject of the Location Agreement. Second, the Land Grant agrees to indemnify and hold harmless Georgia Film Fund Seventeen Production, LLC from any claims which may be made by others for all losses, claims, etc., regardless of the nature of such loss or claim, "...arising from the breach of any warranty, or agreement made by Owner in the Agreement.

Mr. Elwell asserts that he is the owner in fact of the demised premises and has asserted a claim totaling $160,000, all as stated in the email of November 3, 2013 to Ron Lynch from Patrick Elwell, and the "Invoice for Utilization of Parcel", enclosed. I also enclose for your information a letter of July 14, 2013 to Mr. Elwell from attorney Peter Auh, Deputy County Attorney, County of Bernalillo, as well as what purports to be a copy of a Warranty Deed to the "Trustee of the Elwell Revocable Trust..." for your information and ready reference.

On behalf of the Georgia Film Fund Seventeen Productions, LLC, I respectfully request your attention and explanation concerning this state of affairs, and invoke the obligations under paragraph 9 of the Location Agreement to indemnify and hold harmless the Georgia Film Fund from the claims asserted in Mr. Elwell's letter, as well as all other contractual and/or common law duties owed to it, including but not limited to indemnification. We hereby tender the defense of this matter to the La Merced de Pueblo de Chilili Board of Trustees. Please respond to this tender by December 9, 2013.

I look forward to your prompt reply.

Very truly yours,

Geoffrey D. Rieder

GDR/cm
Enclosures



# FOSTER, RIEDER & JACKSON, P.C.

201 Third Street N.W., Suite 1500
Post Office Box 1607
Albuquerque, New Mexico 87103-1607
Telephone (505) 767-0577
Facsimile (505) 242-9944

Geoffrey D. Rieder                                                   email: geoff@frjlaw.com

November 27, 2013
*Via Certified Mail, Return Receipt Requested
and U.S. Mail*

Patrick Elwell
5605 Tioga Road, NW
Albuquerque, NM 87120

Dear Mr. Elwell:

I represent Georgia Film Fund Seventeen Productions, LLC in conjunction with the apparent disagreement concerning its contract for premises for the filming of "Lone Survivor". I have your email of November 3, 2013 to Mr. Ron Lynch, concerning this issue. Should you find it necessary to communicate further with Georgia Film Seventeen Productions, LLC, or any representative of it, I ask that you direct those communications to me.

Enclosed you will please find the Location Agreement between Georgia Film Fund Seventeen Productions, LLC, as the lessee of premises leased by the "Chilili Land Grant ("Owner") as owner of premises described herein...." Pursuant to the Agreement, the Chilili Land Grant/La Merced de Chilili premises were let to Georgia Film for the purpose of shooting the production, all as stated in the Agreement. Please note that in the Agreement, Mr. Juan Sanchez, the President of the "Owner" of the premises represented that:

9. Owner warrants that Owner is the owner (or agent for the owner) of said premises, that Owner is fully authorized to enter into this Agreement and has the right to grant Produce[r] the use of said premises and each and all of the rights herein granted and no third party's permission is required for the use of said premises. Owner shall indemnify and hold Producer harmless from and against any and all loss, cost, liabilities, damages or claims (including attorney's fees) of any nature arising from the breach of warranty or agreement made by Owner in the Agreement.

It is my understanding that you are already aware that Georgia Film worked directly with Mr. Juan Sanchez, as President of the La Merced de Chilili/Chilili Land Grant with respect to its

Patrick Elwell
November 27, 2013
Page 2

use of the premises.  I enclose a copy of the letter of June 14, 2013 addressed to you from Deputy County Attorney, Mr. Peter Auh.  In that letter, Mr. Auh states :

> "It is recommended that you contact Mr. Juan Sanchez, president of La Merced del Chilili to discuss your concern.  The production worked directly with Mr. Juan Sanchez on all contractual agreements related to the construction and use(s) of this film set.

I do not know if you have been in touch with Mr. Sanchez concerning the location agreement as suggested by Deputy County Attorney Auh in his letter, referenced above.  By copy of this letter to Mr. Sanchez, as President of the Chilili Land Grant/La Merced de Chilili property, I am informing him of your claim, and our communication concerning it.  We suggest you contact Mr. Sanchez to resolve any claim you might have.

Very truly yours,

Geoffrey D. Rieder

GDR/cm
Enclosure
cc:     Juan Sanchez



**COMMISSIONERS**

Maggie Hart Stebbins, Chair
District 3

Debbie O'Malley, Vice Chair
District 1

Art De La Cruz, Member
District 2

Lonnie C. Talbert, Member
District 4

Wayne A. Johnson, Member
District 5

**COUNTY MANAGER**

Tom Zdunek

**ELECTED OFFICIALS**

Tanya R. Giddings
Assessor

Maggie Toulouse Oliver
Clerk

Willow Misty Parks
Probate Judge

Dan Houston
Sheriff

Manny Ortiz
Treasurer

*County of Bernalillo*
*State of New Mexico*

County Attorney's Office
*Steve Schiff District Attorney Building*
*520 Lomas, NW, 4th Floor*
*Albuquerque, New Mexico 87102*
*Office: (505) 314-0180 Fax: (505) 242-0828*
*www.bernco.gov/county-attorneys-office/*

June 14, 2013

Mr. Patrick Elwell
5605 Tioga RD NW
Albuquerque, NM 87120

Mr. Elwell,

Thank you for contacting the Bernalillo County Economic Development Department and Film Office in regards to the motion picture *Lone Survivor* and the County's permitting process. The Bernalillo County Film Office is responsible for ensuring all motion picture productions obtain required permits to film within the unincorporated area of Bernalillo County and are in compliance with all codes and ordinances.

After researching your concern, the Bernalillo County Economic Development Department determined that the *Lone Survivor* film set was constructed on property (UPC: 103704317322130119, Map 71 Tract 6), which is registered in your name. Bernalillo County, by law, does not administer any rentals, issue any permits, or otherwise involve itself in outside business arrangements happening on private property. The film permit simply allows the production to film within Bernalillo County limits. As for the set structures that were left standing on the property, County Legal has advised that the County is neither obligated nor able to remove the structure for you.

Please find attached to this letter a copy of the film permit that was issued on October 9th, 2012 to Georgia Film Fund Seventeen, LLC (*Lone Survivor*) allowing the production to film in Bernalillo County.

It is recommended that you contact Mr. Juan Sanchez, president of La Merced del Chilili to discuss your concern. The production worked directly with Mr. Juan Sanchez on all contractual agreements related to the construction and use(s) of this film set.

If you have any further questions please direct them to me at the telephone number listed above. Thank you.

Sincerely,

Peter Auh
Deputy County Attorney

November 3, 2013

To: Mr. Ron Lynch

From: Patrick L. Elwell

Subject: Use of Uniform Property Code 103704317322130119, Map 71, Tract 6 for the filming of "Lone Survivor" movie.

Mr. Lynch, per your e-mail dated 08/07/2013, to Mr. Nicholas Maniatis, Director New Mexico Film Office, I understand that you have received my supporting documents of ownership of Uniform Property Code 103704317322130119, Map 71, Tract 6, which was used by Georgia Film Fund Seventeen, LLC, for the production of the film titled "Lone Survivor." As of the date of this communication, I have not received any response from your office regarding this matter.

On that same date, during our telephone conversation, I requested a copy of the contract for the use of Uniform Property Code 103704317322130119, Map 71, Tract 6, which was not signed by the legal owner, Patrick L. Elwell, as noted on the Warranty Deed, which is filed with the Bernalillo County Clerk's Office in Albuquerque, New Mexico.

To this day, I have no idea who authorized your Production Company to use my property for the filming of the "Lone Survivor," nor have I personally authorized any person or organization to act in my absence or have Power of Attorney regarding the use of Uniform Property Code 103704317322130119, Map 71, Tract 6.

In my conversations with Location Managers of other production companies it is my understanding that one of the routine procedures for determining the ownership of selected sites is to research ownership of properties through official public records; in this case, the Bernalillo County Assessor's Office. In this instance, according to the Bernalillo County Location Filming Permit, Mr. Jonathan Slator was the Location Manager listed on the permit and obviously failed to conduct routine research regarding the ownership of Uniform Property Code 103704317322130119, Map 71, Tract 6, registered by Bernalillo County (See enclosed letter from Peter Auh, Deputy County Attorney, County of Bernalillo).

Mr. Lynch, again referring to our telephone conversation on 8/7/2013, (and I might add in your e-mails to Mr. Maniatis) you emphatically accuse me of "perpetuating a classic shake down," which I take to be a personal affront to my character and

reputation. I contend that you and Mr. Slator were involved in a classic shake down, but not by me, the official and lawfully recognized owner of Uniform Property Code 103704317322130119, Map 71, Tract 6.


I am now providing you an itemized statement for the privilege and use of my property, Uniform Property Code 103704317322130119, Map 71, Tract 6, during the filming of "Lone Survivor."

Please submit my invoice to your business office for prompt payment in the name of Patrick L. Elwell for the use of Uniform Property Code 103704317322130119, Map 71, Tract 6, for the filming of "Lone Survivor."


Respectfully,


Patrick L. Elwell

INVOICE FOR UTILIZATION OF PARCEL

UNIFORM PROPERTY CODE 103704317322130119, Map 71, Tract 6,

BY GEORGIA FUND SEVENTEEN FOR INTENT TO FILM

"LONE SURVIVOR" - PROPERTY WARRANTY DEEDED

TO

PATRICK L. ELWELL


PROPERTY USAGE – 19 DAYS FILMING & PREP WORK ....... $ 75,000

*RECLAMATION COSTS DUE TO DESTRUCTION OF

NATURAL EROSION PREVENTION VEGETATION ............... $ 85,000


TOTAL ............................................................................$160,000


*See Bernalillo County Location Filming Permit dated 10/9/2012, Item 9, where it is noted that there would be "no significant disturbance of terrain or vegetation."